UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| RICHARD A. CALVAGNO,<br><br>    Plaintiff,<br><br>vs.<br><br><br>MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY,<br><br>    Defendant. | 2:08-cv-00535-JCM-RJJ<br><br>REPORT & RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE<br>(Plaintiff's Motion for Reversal (#12)) |

This matter is before the Court on Plaintiff Richard A. Calvagno's Motion for Reversal (#12). The Court has reviewed Plaintiff's Motion (#12), Defendant's Opposition (#13), and Plaintiff's Reply (#14).

**BACKGROUND**

Plaintiff Richard A. Calvagno (Calvagno) seeks judicial review of Administrative Law Judge (ALJ) Donald R. Colpitts' August 24, 2006, decision which the Appeals Council affirmed on March 5, 2008. *See* Administrative Record (#17) (Record) at pp. 4-6; 22-30. Calvagno is a sixty-two year old Vietnam War veteran who served in the Army from December 5, 1968, to July 9, 1970. (Record at 72, 77). Calvagno claims that he became disabled on March 1, 1999, due to post traumatic stress syndrome (PTSD). Record at 17.

The last date Calvagno met the insured status requirements of the Social Security Act was September 30, 2000. (Record at 24). On July 20, 2004, Calvagno filed an application for social security disability benefits. (Record at 20). Calvagno's claim was denied initially on November 3, 2004, and again upon reconsideration on September 23, 2005. *Id.* Consequently, Calvagno requested

a hearing before an ALJ. *Id.* On July 20, 2006, Calvagno appeared before the ALJ. The ALJ conducted a hearing and entered a written decision concluding that Calvagno was not disabled on or before September 30, 2000, the date he was last insured. (Record at 29.) The Social Security Appeals Counsel affirmed the decision. (Record at 4-6).

Calvagno filed this action requesting that the Court either reverse or remand this case for the following reasons: (1) the ALJ did not adequately consider the nature of PTSD in the decision; (2) the ALJ did not accurately determine Calvagno's date of disability; (3) the ALJ improperly rejected Calvagno's testimony; and (4) Social Security Ruling 83-20 required the ALJ to adopt the claimant's alleged onset date.

**I.     Summary of Medical Evidence and Testimony**

A. Medical Records Generated Before Calvagno's Last Date Insured, September 30, 2000

In March 2000, Calvagno visited the Department of Veteran Affairs in Henderson, Nevada (VA). (Record at 325). Calvagno reported that he had been previously diagnosed with PTSD and depression at a VA hospital in New York and that he was receiving treatment. (Record at 326). The Nevada VA noted a primary diagnosis of PTSD and a secondary diagnosis of depression. (Record at 325). Calvagno sought a referral to the Medical Health Unit (MHU) and prescription medication. (Record at 326).

In August 2000, Calvagno returned to the Nevada VA seeking counseling. (Record at 320). VA records showed that Calvagno was monitored for PTSD at a VA facility in Northport, New York, which assessed him at a 30% disability rating. *Id.*  Calvagno reported that he had moved to Nevada about one year before and was seeking follow-up. *Id.*  Calvagno reported a lack of sleep, feeling "on edge" when dealing with people, always being "on guard," hating crowds, lacking motivation, and relationship problems. *Id.*  The VA in Nevada administered a Mental Status Exam, which found that Calvagno was friendly, cooperative and sometimes laughed nervously. (Record at 321). Other findings included: sad and irritable mood; coherent and clear speech; rational and coherent thoughts; denied hallucinations and delusional thinking; fair memory; good intellect; poor insight and judgment; poor motivation and concentration; and reported trouble sleeping. *Id.*

Calvagno reported that even when he was on medication he was bothered by all his PTSD symptoms. *Id.* However, he felt more in control when on medication. *Id.* Calvagno reported he first sought treatment for PTSD four years prior to the exam and that he was no longer able to work due to symptoms of PTSD. *Id.*

The Nevada VA's diagnostic impression was that Calvagno was treated for PTSD for several years and his symptoms improved as he learned to manage them. (Record at 322). Further, the VA believed Calvagno would benefit from counseling. Calvagno did not want medication at the time. *Id.* Calvagno was assessed a Global Assessment Functioning (GAF) score of 45.[1]

B. Medical Records Generated After September 30, 2000

In November 2000, Calvagno reported to the VA that previously prescribed medication had helped his symptoms. However, he also reported that due to the hassle of getting the medication and its side effects, he stopped taking the previously prescribed medication. (Record at 318-319). He reported that he could not work, had trouble getting along with people, lacked ambition, did not feel like working, found it hard to concentrate, and had trouble sleeping. (Record at 318).

In March 2001, the VA assessed Calvagno a GAF of 38. (Record at 314). Calvagno's diagnosis at that time was PTSD and a history of depression in remission. *Id.* VA records showed that Calvagno continued without medication because he disliked the side effects. (Record at 316). Calvagno also reported irritability, trouble getting along with people, and general lack of interest. (Record at 314).

In August 2001, the VA assessed Calvagno a GAF of 32. (Record at 313). On examination, Calvagno had a loud voice, would raise his voice if the examiner tried to interject and had mild pressure of speech. (Record at 313).

In February 2002, Calvagno had not been taking medication and reported that he was irritable and had poor concentration and poor ambition. (Record at 311). The VA assessed Calvagno a GAF

---

[1] Global Assessment Functioning (GAF) represents the examiner's judgement of the individual's overall level of psychological functioning. *See* American Psychiatric Association Diagnostic & Statistical Manual of Mental Disorders 32 (4th ed. 2000) (DSM-IV). A GAF of 45 [41-50] indicates serious symptoms or any serious impairment in social, occupational, or school functioning. *See* American Psychiatric Association Diagnostic & Statistical Manual of Mental Disorders (4th ed. 2000) (DSM-IV).

of 28. *Id.* In May 2002, VA records showed that Calvagno was still not taking any medication. (Record at 307). In July 2002, Calvagno reported he had not held a steady job for over a year due to his PTSD symptoms and that he avoided leaving home. (Record at 305-306). The VA assessed Calvagno a GAF of 26. *Id.* In September 2002, the VA assessed Calvagno a GAF of 30 and outlined a PTSD treatment plan for him. (Record at 397-398).

In January 2002, Calvagno reported to VA staff that the VA had turned down his request for an increase in his disability rating. (Record at 293). He also reported that he had not been working. *Id*. Calvagno stated he would be willing to take medication, but none had helped much. *Id.* The VA noted that Calvagno lacked concentration and was "irritable and irritating." (Record at 294). Additionally, the VA noted that Calvagno's behavior was unusually severe for PTSD patients. *Id.* the VA assessed Calvagno a GAF of 26 and he was prescribed medication. *Id.*

On April 9, 2003, the VA increased Calvagno's disability rating from 30 to 70 percent and granted entitlement to individual unemployment effective February 18, 1999 (Record at 77, 365). The VA considered evidence from February 2000 through January 2003, as well as Calvagno's claims file (Record at 78, 370). The VA determined that Calvagno's symptoms had increased in severity. *Id.* The VA assigned a retroactive effective date of February 18, 1999. (Record at 70, 371). VA records indicated that the effective date was retroactive because that was the date Calvagno requested an increase evaluation. *Id*. Additionally, the VA noted that there was no evidence Calvagno's symptoms had increased prior to February 18, 1999, but rather that the evidence showed an increase in his symptoms around November 7, 2001. Id.

Calvagno attended group therapy sessions from March through December 2003. (Record at 265, 264-269, 271-273, 275-277, 282-292). In July 2003, one VA progress note labeled Calvagno's PTSD as "prolonged" and "chronic." (Record at 283). In September 2003, Calvagno reported that he had slept in his car because he was angry at everyone. (Record at 270). The VA noted that Calvagno repeated questions and had poor concentration. *Id.* The VA assessed Calvagno a GAF of 26. (Record at 271). Calvagno attended group counseling sessions in January and February 2004. (Record at 246 - 247). In January 2004 the VA assessed Calvagno a GAF of 26 (Record at 251); and in February 2004 the VA assessed Calvagno a GAF of 45 (Record at 246). In June 2004, Calvagno

- 4 -

reported that he got lost driving to the hospital and that a fellow group counseling attendee had just committed suicide. (Record at 233).

In August 2004 Calvagno was diagnosed with bipolar disorder. (Record at 224). On August 28, 2004, Calvagno's wife, Pauline Calvagno, completed a third-party adult function report and stated that Calvagno did not work all day, socialize, or sleep well. (Record at 112-119). According to Mrs. Calvagno, Calvagno spent his days eating, watching television, walking around the house, and playing with the dog. (Record at 112). Mrs. Calvagno noticed that Calvagno lacked motivation and was irritable. (Record at 112-119). In September 2005, Calvagno reported that he felt down and depressed. (Record at 349). The VA noted that Calvagno had no acute mental status findings. (Record at 350).

On October 15, 2004, at the request of the social security commissioner, state agency doctor Helena Mercy, Ph.D., reviewed Calvagno's medical record. She determined that there was insufficient evidence of mental impairment prior to September 30, 2000 (Record at 137-150). On September 22, 2005, state agency doctor Mark Richmond, M.D., reviewed the record and affirmed Dr. Mercy's opinion. (Record at 137).

In January 2006, Calvagno told the VA that his attorney wanted a letter from them stating he was granted disability. (Record at 344). In April 2006, the VA prescribed Calvagno anti-anxiety medication for stress. (Record at 339). In June 2006, Calvagno reported PTSD symptoms, including flashbacks and nightmares regarding his experience in Vietnam, irritability, decreased interest and motivation, and trouble getting along with people. (Record at 333-334). Calvagno's diagnosis was combat induced PTSD and his GAF was 30. (Record at 337-338). Calvagno reported that his PTSD symptoms were manageable and at a tolerable level for him. (Record at 338). Calvagno was prescribed medication. (Record at 338).

**DISCUSSION**

I.  **Standard of Review**

A federal court's review of an ALJ's decision is limited to determining (1) whether the ALJ's decision, as a whole, is supported by substantial evidence, and (2) whether the ALJ applied proper legal standards. 42 U.S.C § 405(g). The Court must look to the record as a whole and consider

adverse and supporting evidence. *Penny v. Sullivan*, 981 F.2d 953, 956 (9th Cir. 1992). Substantial evidence is more than a mere scintilla but less than a preponderance. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). Thus, if evidence is susceptible to more than one rational interpretation, the ALJ's decision must be upheld. *Burch v. Barnhart*, 400 F3d 676, 679 (9th Cir, 2005).

## II.     Whether the ALJ's Decision is Supported by Substantial Evidence

Social Security disability claims are evaluated using a five-step sequential evaluation procedure. 20 C.F.R § 404.1520(b); *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2001). The claimant carries the burden with respect to steps one though four. *Tackett*, 180 F.3d at 1098. If a claimant is found to be disabled or not disabled, at any point during the evaluation, then no further assessment is necessary. 20 C.F.R § 404.1520(a). At step one, the ALJ determines if the claimant is working and if so, whether the work is substantial gainful activity. 20 C.F.R § 404.1520(b). If the claimant is engaging in substantial gainful activity, the claimant is not considered disabled. *Id*. At step two, the ALJ determines if the claimant's impairment is severe. 20 C.F.R. § 404.1520(c). An impairment is severe if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c). At step three, the claimant's impairment must meet or equal one of the impairments listed in 20 C.F.R. pt. 404, subpt. P. App. 1. The claimant will be found disabled if the claimant's impairment meets or equals a listed impairment in App. 1. 20 C.F.R. § 404.1520(d). If the claimant's impairment does not equal or meet a listed impairment, the fourth step is to determine if the claimant can perform past relevant work. 20 C.F.R. § 404.1520(e). If the claimant can engage in past relevant work, then no disability exists. *Id*. If the claimant cannot perform past relevant work, the Secretary has the burden to prove the fifth and final step by demonstrating that the claimant is able to perform other kinds of work. 20 C.F.R. § 404.1520(f). If it is not demonstrated that the claimant can perform other kinds of work, the claimant is entitled to disability benefits. 20 C.F.R. § 404.1520(a).

In the instant case, there is no dispute concerning the ALJ's findings at step one, step two and step four. At step one, the ALJ found that Calvagno had not engaged in substantial gainful activity from his alleged onset date of March 1, 1999, through September 30, 2000, the date he was last insured. (Record at 24). At step two, the ALJ found that Calvagno had the following severe

impairments: a history of post traumatic stress syndrome and depression, in remission. (Record at 25). Contrary to Calvagno's contention, the ALJ did find that he suffered from a severe mental impairment. At step four, the ALJ found that Calvagno was unable to perform past relevant work from March 1, 1999, through September 30, 2000. (Record at 28).

The parties disagree regarding the ALJ's findings and conclusions at step three and step five of the analysis. At step three, the ALJ found that Calvagno did not have an impairment that met or equaled one of the listed impairments in App. 1. (Record at 25). Calvagno claims that the ALJ did not properly select and evaluate evidence when comparing his impairments to the impairment listings 12.04(B) and 12.06(B). 20 C.F.R. pt. 404, subpt. P. App. 1. Calvagno argues: (1) the ALJ did not give enough weight to his August 2000 medical exam; (2) the ALJ did not properly assess the credibility of his testimony; (3) the ALJ's decision to reject the VA's decision to grant disability was improper; and (4) the ALJ erred in not evaluating Mrs. Calvagno's third-party adult function report.

At step five, the ALJ found that jobs existed in significant numbers in the national economy which Calvagno could have performed. (Record at 29). The ALJ relied on the testimony of a vocational expert (vocational expert). The ALJ asked the vocational expert a hypothetical question regarding the employment possibilities for someone with Calvagno's vocational profile and the vocational expert concluded that there were 7,700 janitor jobs in the Las Vegas, NV, regional economy. (Record at 30). Calvagno claims that the vocational expert's testimony was defective because the vocational expert did not account for Calvagno's testimony regarding his impairments when determining if he could perform other kinds of work. (*Id.* (#12), p. 21).

Finally, Calvagno claims the ALJ erred by not following the mandates of Social Security Ruling 83-20 ("SSR 83-20"). SSR 83-20 is used to determine the date an individual became disabled. Calvagno argues SSR 83-20 is a directive created to guide adjudication in cases similar to the instant case. (Record at 14). The Defendant contends that because the ALJ did not find Calvagno disabled at any time, he was not required to infer an onset date or engage in any SSR 83-20 analysis.

. . . .

### A.     Selection and Evaluation of Evidence

Calvagno argues that the August 2000 medical exam is documentation that his impairments met or equaled one of the listed impairments in 20 C.F.R. pt. 404, subpt. P. App. 1, specifically impairment listings 12.04(B) and 12.06(B). Calvagno also argues that the ALJ "relied heavily" on the state agency doctor's assessment at the expense of the VA records.

To satisfy impairment listings 12.04(B) and 12.06(B), plaintiff must show that his mental impairments resulted in at least two of the following functional impairments: (1) marked restriction of activities of daily living; or (2) marked difficulties in maintaining social functioning; or (3) marked difficulty in maintaining concentration, persistence, or pace; or (4) repeated episodes (three within one year) of decompensation, each of extended duration. See 20 C.F.R. pt. 404, subpt. P, App. 1, §§ 12.00(C), 12.04(B), 12.06(B).

The ALJ found that Calvagno did not suffer from any of the functional impairments listed in 12.06(B) and 12.04(B). (Record at 25). The ALJ explained that the record indicated, "no greater than 'mild' restrictions of activities of daily living; 'moderate' difficulties in maintaining social functioning; and 'mild' difficulties in maintaining concentration, persistence, or pace...." Additionally, Calvagno had no episodes of decompensation. The ALJ reached its findings based on the VA record and noted they are more favorable to Calvagno than the findings of the state agency review psychologists. The ALJ determined, that based on the record, "the degree of limitation found in the areas of functioning does not meet the requirements...." Furthermore, the ALJ found that Clavagno's impairments did not cause "more than a minimal limitation of ability to do basic work activities, with symptoms or signs attenuated by medication or psychological support..." These findings are consistent with the VA's diagnostic impression from the August 2000 exam. The VA's finding were that Calvagno's symptoms improved as he learned to manage them and that medication and counseling would also help his symptoms. (Record at 322). It appears the ALJ did consider the August exam, as well as other VA records to make its determination.

Calvagno claims the August 2000 exam which documented Calvagno as "sad and irritable," untrusting of others and having relationship problems, shows Calvagno met criteria 2, marked difficultly in maintaining social functioning. Additionally, Calvagno argues that because the exam

- 8 -

1  documented Calvagno's insight, judgment, motivation, and concentration as "poor," Calvagno met
2  criteria 3, difficulty in maintaining concentration, persistence, or pace. Calvagno claims that because
3  he avoided going to stores, he met criteria 1, marked restriction of daily activities. Calvagno also
4  claims the ALJ "weighed heavily" the assessments of state agency doctors Helena Mercy, Ph.D. and
5  Mark Richmond, M.D. (Record at 137-150).

6  According to 20 C.F.R. § 404.1527 (f)(2)(I), the ALJ "must consider findings of State agency
7  medical and psychological consultants or other program physicians or psychologists as opinion
8  evidence. 20 C.F.R. § 404.1527 (f)(2)(I). The findings of non-treating, non-examining physicians
9  can amount to substantial evidence, so long as other evidence in the record supports those findings.
10 *Saelee v. Charter*, 94 F.3d 520, 522 (9th Cir. 1996).

11  Here, the ALJ consider the findings of the State agency psychologists. However, the ALJ
12  specifically states that his conclusions are "more favorable" than those of the state agency review
13  psychologist. (Record at 25). The ALJ only refers to the review psychologist's findings up to the
14  point that they are supported by the VA records. Calvagno's implied contention that the ALJ
15  interpreted the VA record differently than he would have liked, does not mean the ALJ erred in it's
16  "selection and evaluation" of evidence.

17  **B.     Credibility Determination**

18  Calvagno argues that the ALJ's decision does not contain a proper credibility analysis in
19  regard to Calvagno's testimony. (Motion for Reversal (#12), at 17). An ALJ is required to make
20  specific credibility findings. *Thomas v. Barnhart*, 278 F.3d 947, 958-959 (9th Cir. 2002). The
21  ALJ's credibility finding must be supported by the record and sufficiently specific to ensure a
22  reviewing court that the ALJ did not arbitrarily reject a claimant's subjective testimony. *Bunnell v.*
23  *Sullivan,* 947 F.2d 341, 345-346 (9th Cir. 1995). Testimony may not be entirely discounted simply
24  because there was a lack of objective finding. *Rashah v. Sullivan*, 903 F.2d 1229, 1231 ((th Cir.
25  1990). However, an ALJ is permitted to consider ordinary techniques for credibility evaluation, *See*
26  *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997); and to make inferences "logically
27  flowing from the evidence." *Macri v. Chater*, 93 F.3d 540, 544 (9th Cir. 1996).
28  In evaluating whether subjective complaints are credible, the ALJ should first consider

objective medical evidence and then consider other factors. *Burnell*, 947 F.2d at 344. If there is objective medical evidence of an impairment, the ALJ may then consider the nature of the symptoms alleged, including aggravating factors, medication, treatment and functional restrictions. *Id.* at 345-347. Some factors the ALJ may also consider are: (1) the claimant's reputation for truthfulness; (2) inconsistencies in testimony or between testimony and conduct; (3) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (4) the claimant's daily activities. *Orn v. Astrue*, 495 F.3d 625, 636 (9th Cir. 2007); *Smolen v. Charter*, 80 F.3d 1273, 1284 ((th Cir. 1996).

Here, the ALJ found that Calvagno was unable to perform work activities that required extensive contact with others; however, the ALJ noted that Calvagno's allegations were not fully persuasive. (Record at 28). The ALJ specifically rejected Calvagno's claim that he was unable to perform any work activities that required <u>any</u> contact with other workers. *Id.*(emphasis in original). The ALJ noted that the objective findings of the medical record did not show that Calvagno had a medically determinable impairment that would have limited him to the extent alleged. (Record at 27). "There is no contemporaneous medical evidence that shows any deterioration in [Calvagno's] condition as of his alleged onset of disability." (Record at 28).

The ALJ explained that because Calvagno was receiving treatment for PTSD in New York and then chose not to seek treatment in Las Vegas for over a year, it indicated that Calvagno's condition was not as severe as alleged. (Record at 28). Calvagno did not provide an explanation for why he failed to seek treatment. The ALJ pointed to the fact that Calvagno had not been using medication, which had helped in the past, as additional evidence Calvagno's symptoms were not as severe as alleged. (Record at 27). The only side effect from the medication Calvagno reported was, being too "mellow." Additionally, the ALJ noted a contradiction in Calvagno's testimony. Calvagno said, "I just don't feel like working," and then later claimed to have put in for work at various part time jobs, but was having trouble getting hired. (Record at 27). The ALJ found that the above mentioned facts weighed against "crediting [Calvagno] as having had symptoms and functional limitations of the severity alleged." (Record at27).

Nevertheless, the ALJ gave Calvagno "the maximum benefit of the doubt" and found that

1  Calvagno could not perform work activities that required extensive contact with others. (Record at
2  28). Clavagno's primary complaint was that he did not like to be around other people and the ALJ's
3  refusal to extend that complaint to "could not be around any people" is well supported by the record.
4      Calvagno contends that the ALJ erred by asking the vocational expert to assume that
5  Calvagno was credible only to the extent that he would be unable to be around other people. The
6  ALJ did not error because the ALJ's credibility findings were sufficiently specific and supported by
7  the record. Thus, the Court finds that the ALJ applied proper legal standards for evaluating
8  Calvagno's allegations regarding his degree of limitations and impairments and his ability to work.

9      **C.**    **Veteran Administration's Disability Determination**

10      Calvagno argues that the ALJ erred by not following the VA's 70 percent disability
11  determination. Calvagno cites *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002), for the
12  proposition that an ALJ must pay particularly close attention to the VA's findings regarding a PTSD
13  diagnosis. Additionally, "where the [ALJ] fails to provide adequate reasons for rejecting the
14  opinion of a treating or examining physician, [the court] credit[s] that opinion 'as a matter of law.'"
15  *Smolen v. Charter*, 80 F.3d 1292.

16      In the instant case, the ALJ considered the VA's findings. (Record at 28). The ALJ explained
17  that he was not persuaded by the retroactive application of the 70 percent disability rating and instead
18  gave more weight to contemporaneous evidence. (Record at 27-28). Calvagno's alleged onset date
19  is March 1, 1999, and his last date insured was September 30, 2000. *Supra*. The ALJ explained that
20  because the February 1999 evaluation was based on findings during the period of time material to
21  the decision, it was a better reflection of the treating source's impression on that date than evidence
22  after Calvagno's last date insured,. (Record at 27-28). The ALJ noted that the VA's evaluation in
23  April 2003, was a better reflection of the treating source's opinion at that date rather than Calvagno's
24  status from March 1, 1999 through September 30, 2000. (Record at 28). Further, the VA records
25  explain that the evidence showed "an increase in [Calvagno"]s symptoms about the time of the VA
26  examination of November 7, 2001." (Record at 79, 371). The VA records also note that the evidence
27  did not show an increase in symptoms around March 1, 1999.

28      Therefore, the ALJ payed close attention to the VA's findings. The ALJ gave adequate

reasons for giving little weight to the VA's retroactive application of the increased disability rating.

### D. Mrs. Calvagno's Third-Party Adult Function Report

Calvagno claims that the ALJ should have evaluated the third-party report of his wife. However, the ALJ is not required to discuss every piece of evidence in the record. *See Howard v. Barnhart*, 341 F.3d 1006, 1010 (9th Cir. 2003). Nor is the ALJ required to discuss lay witness statements that are neither significant nor probative. *See Ukolov v. Barnhart*, 420 F.3d 1002, 1006 fn. 6 (9th Cir. 2005) ("Because the testimony of the lay witnesses encompassed only symptoms, any failure of the ALJ to adequately address that testimony does not affect the outcome of the case").

Here, the ALJ did not specifically address Mrs. Calvagno's report. However, Mrs. Calvagno's report was simply a description of Calvagno's symptoms and added no new information for the ALJ to consider. (Record at 112-119). The Court finds that the failure of the ALJ to address Mrs. Calvagno's third-party report does not affect the outcome of this case.

### E. Vocational Expert's Testimony

Calvano claims that the vocational expert's testimony was not substantial evidence to support the ALJ's decision to deny Clavagno social security benefits. Specifically, Calvagno argues that the ALJ should have included Calvagno's manifestations of his impairment in the hypothetical question asked to the vocational expert.

The ALJ asks the vocational expert a hypothetical question based on medical assumptions supported by substantial evidence in the record reflecting the claimant's limitations. *See Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995). A vocational expert's testimony is reliable if the hypothetical includes all of the physical limitations supported by the record. *Thomas v. Barnhart*, 278 F.3d 947, 956 (9th Cir. 2002). However, an ALJ "is free to accept or reject restrictions in a hypothetical question that are not supported by substantial evidence." *Greger v. Barnhart*, 464 F.3d 967, 973 (9th Cir. 2006)(citing *Osenbrock v. Apfel*, 240 F.3d 1157, 1164-65 (9th Cir. 2001)).

Here, the ALJ asked the vocational expert to assume that a worker of the claimant's vocational profile could perform work except for work around other people. (Record at 30). Calvagno asserts that the ALJ made no credibility determination and therefor gave no explanation for omitting Calvagno's subjective limitations in the hypothetical question asked to the vocational

- 12 -

1 expert.  However, The ALJ's hypothetical contained all of the limitations that the ALJ found
2 credible and that were supported by substantial evidence in the record. Additionally, the ALJ made
3 a credibility determination which was supported by substantial evidence.

### F. Social Security Ruling 83-20

Calvagno claims that the ALJ erred in not following the mandates of SSR 83-20, because it is a directive created to guide an ALJ in cases similar to the instant case.  SSR 83-20 states: "In addition to determining that an individual is disabled, the decision maker must also establish the onset date of disability." SSR 83-20 (PPS-100).   The Defense argues that because the ALJ did not find that Calvagno was disabled at any time, the ALJ was not required to infer an onset date or engage in a SSR 83-20 analysis. *See Sam v. Astrue*, 550 F.3d 808-11 (9th Cir. 2008).

Calvagno contends that because the ALJ only found that Calvagno was not disabled at any time from March 1, 1999, through September 30, 2000, that the ALJ did not find that Calvagno was not disabled at "any time." This argument falls short however, because the ALJ did find that Calvagno was not disabled from March 1, 1999, through September 30, 2000, which is in fact, a "time." Additionally, if Calvagno's intended argument is that the ALJ was required to find Calvagno has never been disabled in order to avoid a SSR 83-20 analysis, he has failed to cite any authority to support this theory.  The relevant time period in this case is very clear.  The ALJ reached its conclusion based on the entire record and testimony and cannot be expected to focus its determination on periods outside the relevant dates.  For these reasons, the Court finds the ALJ was not required to engage in a SSR 83-20 analysis.

### **RECOMMENDATION**

Based on the foregoing and good cause appearing therefore,

IT IS THE RECOMMENDATION of the undersigned Magistrate Judge that the Plaintiff's Motion for Reversal (#12) be **DENIED**.

### **NOTICE**

Pursuant to Local Rule IB 3-2 **any objection to this Report and Recommendation must**

1 **be in writing and filed with the Clerk of the Court on or before September 21, 2010 .** The
2 Supreme Court has held that the courts of appeal may determine that an appeal has been waived due
3 to the failure to file objections within the specified time. *Thomas v. Arn*, 474 U.S. 140, 142 (1985).
4 This circuit has also held that (1) failure to file objections within the specified time and (2) failure
5 to properly address and brief the objectionable issues waives the right to appeal the District Court's
6 order and/or appeal factual issues from the order of the District Court. *Martinez v. Ylst*, 951 F.2d
7 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).

DATED this _7th_ day of September, 2010.

_____
ROBERT J. JOHNSTON
United States Magistrate Judge